# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

TAMRAT ASRAT,                    )
    **Plaintiff,**              )
    **v.**                      )
                    )     **Case No. 1:18-cv-1453**

WILLIAM BARR,                    )
    Attorney General of the United  )
    States, *et al.*,               )
    **Defendants.**             )
                    )

## MEMORANDUM OPINION

Plaintiff, a national and citizen of Ethiopia, brings this action pursuant to 8 U.S.C. § 1421(c), challenging the United States Citizenship and Immigration Service's ("USCIS") denial of his naturalization application. Specifically, plaintiff contends the denial was improper because USCIS erroneously concluded that plaintiff was never lawfully admitted for permanent residence in the United States. In response, defendants argue that USCIS was correct to conclude that plaintiff was never lawfully admitted for permanent residence and that plaintiff's application fails for the additional reason that plaintiff cannot establish that he is a person of good moral character.

At issue in this matter are the parties' cross-motions for summary judgment. The motions have been fully briefed and argued and are thus ripe for disposition. For the reasons that follow, defendants' motion for summary judgment must be granted and plaintiff's motion for summary judgment must be denied.

## I.

Summary judgment is appropriate only where there are no genuine disputes of material fact. Rule 56, Fed. R. Civ. P. Accordingly, the material record facts as to which no genuine dispute exists must first be identified. The following undisputed material facts are derived from the parties' respective lists of undisputed material facts.

1

- Plaintiff is a national and citizen of Ethiopia.

- On September 6, 2002, plaintiff filed an application for asylum (Form I-589) in the United States. In the application, plaintiff represented that he first entered the United States on September 1, 2001 by unlawfully crossing the Mexican-American border without inspection near San Diego, California. Plaintiff sought asylum on the basis of his alleged political opinion and membership in a particular social group in Ethiopia, the Ethiopian Democratic Party ("EDP").

- On May 29, 2003, Immigration and Naturalization Service ("INS") officials interviewed plaintiff regarding his asylum application. After the interview, INS officials rejected the application based on their conclusion that plaintiff had filed his asylum application more than one year after entering the United States.[1]

- On June 10, 2003, INS filed with the Immigration Court and issued to plaintiff a Notice to Appear, which charged plaintiff with removal on the ground that he was present in the United States without having been admitted or paroled and commenced removal proceedings against plaintiff in the Immigration Court located in Baltimore, Maryland ("the Immigration Court").

- On May 9, 2005, Immigration Judge Dufresne issued an oral decision and written order denying plaintiff's asylum application as untimely and thus barred. In addition, the Immigration Judge ordered plaintiff removed from the United States to Ethiopia.

- On June 8, 2005, plaintiff filed a motion to reopen his removal proceedings. The Immigration Judge granted the motion and set a hearing for March 21, 2006 to address the merits of plaintiff's asylum application.

- On March 21, 2006, after hearing testimony from plaintiff and other witnesses, Immigration Judge Dufresne issued a detailed oral decision[2] denying plaintiff's asylum application on two grounds. First, the Immigration Judge affirmed her prior conclusion that plaintiff filed his asylum application beyond the one-year statutory limitations period, which rendered the application time-barred. Second, the Immigration Judge denied plaintiff's asylum application on the merits, finding (i) that plaintiff had not adduced sufficient credible evidence that he would be subject to persecution in Ethiopia and (ii) that plaintiff had knowingly filed a frivolous asylum application.[3] Accordingly, the Immigration Judge ordered plaintiff removed to Ethiopia.

---

[1] Absent "changed" or "extraordinary circumstances," an individual seeking asylum must file the requisite application within one year "after the date of" their "arrival in the United States." 8 U.S.C. § 1158(a)(2)(B).

[2] The transcript of the Immigration Judge's decision can be found at AR159–75.

[3] As explained in the regulations under the Immigration and Nationality Act, "an asylum application is frivolous if any of its material elements is deliberately fabricated." 8 C.F.R. § 208.20. In this respect, the Immigration Court found that plaintiff's asylum application was frivolous because the Immigration Court found plaintiff had submitted fabricated evidence, namely a letter purportedly issued by the EDP, in support of his claim that he was a member of the EDP. Plaintiff spills much ink contesting this finding by the Immigration Court, but for the reasons stated *infra* at footnote 16, the correctness of the Immigration court's frivolousness finding is not material to the resolution of the instant matter.

- On March 31, 2006, plaintiff noticed an appeal of the Immigration Judge's removal order to the Board of Immigration Appeals ("BIA").

- On November 1, 2006, plaintiff married a United States citizen named Dejene Madhanit Metaferia. On December 7, 2006, Metaferia filed a Petition for Alien Relative (Form I-130) with USCIS on plaintiff's behalf, seeking to have plaintiff classified as her spouse for immigration purposes.[4] USCIS approved Metaferia's petition on April 30, 2008.

- On August 19, 2008, plaintiff transmitted an application to adjust his status to lawful permanent resident (Form I-485) to USCIS based on the approval of Metaferia's alien relative petition.[5] Plaintiff also filed a motion with the BIA, requesting that his removal proceedings be remanded to the Immigration Court in light of the approval of Metaferia's alien relative petition. The BIA granted plaintiff's motion, and on November 25, 2008, plaintiff filed his adjustment application in the Immigration Court. Importantly, the BIA did not address or adjudicate the Immigration Court's frivolousness finding on appeal.

- On January 27, 2009, Immigration Judge Dufresne held a hearing in plaintiff's remanded removal proceedings. The Immigration Judge continued the hearing and stated that further proceedings in Immigration Court would focus on whether the application for adjustment of status should be denied based on Judge Dufresne's previous finding that plaintiff had knowingly filed a frivolous asylum application, which

- On September 21, 2011, the Immigration Court, through another Immigration Judge, denied plaintiff's adjustment of status application. Specifically, the Immigration Judge held:

    > IT IS HEREBY ORDERED that the application for adjustment of status is denied inasmuch as the previous order of Judge Dufresne finding that the application for asylum filed by [plaintiff] was one in which he knowingly filed a frivolous application. That being the case, the Court cannot approve an application for adjustment because the finding of knowingly filing a frivolous claim for asylum would bar [plaintiff] forever from getting any kind of visa.

    AR947–48.[6] The Immigration Judge also ordered plaintiff removed to Ethiopia.

- Plaintiff noticed a timely appeal of the Immigration Judge's September 21, 2011 order to the BIA.

- On December 18, 2012, while plaintiff's second BIA appeal remained pending, USCIS transmitted to plaintiff a Notice of Action (Form I-797) indicating that his application for

---

[4] In general, an alien must obtain an immigration visa to immigrate legally to the United States. *See generally* 8 U.S.C. §§ 1151–54. One way to obtain an immigration visa is through the successful petition of a spouse who is already a United States citizen. *See id.* § 1151(b)(2)(A)(i). Specifically, the citizen-spouse must file an I-130 petition with USCIS requesting that the agency classify the alien as an immediate relative of the citizen-spouse, thereby making the alien eligible for an immigration visa. *See id.* § 1154(a).

[5] For the reasons stated below, because plaintiff remained in removal proceedings, USCIS was prohibited from taking action—and in fact took no action—on plaintiff's application to adjust his status to lawful permanent resident.

[6] References to "AR" followed by a number indicate the page in the Administrative Record (Dkts. 18-2 & 18-3) on which the cited information may be found.

adjustment of status had been approved. This notice was transmitted even though (i) plaintiff remained in removal proceedings at the time and (ii) an Immigration Judge had denied plaintiff's application for adjustment of status based on Immigration Judge Dufresne's frivolousness finding. USCIS also transmitted to plaintiff a "permanent resident card" (Form I-551), which stated that plaintiff had been a permanent resident of the United States since September 21, 2011—the exact date on which the Immigration Court *denied* plaintiff's application for adjustment of status.

- Plaintiff then filed a motion for voluntary dismissal of his pending BIA appeal, which the BIA granted on January 31, 2013.[7]

- On July 18, 2016, plaintiff filed an application to become a naturalized citizen of the United States (Form N-400). The application required plaintiff to answer a series of questions, including: "34. Have you ever been ordered removed, excluded, or deported from the United States" and "35. Have you ever been placed in removal, exclusion, or deportation proceedings." Plaintiff answered "No" to both questions 34 and 35. Plaintiff signed the application, certifying under penalty of perjury under the laws of the United States of America that his application was true and correct.

- USCIS interviewed plaintiff on his naturalization application on February 23, 2017. At the interview, plaintiff again signed the application in the presence of USCIS Officer Minah Loo, "certify[ing] under penalty of perjury under the laws of the United States of America that [plaintiff] know[s] that the contents of this Form N-400, Application for Naturalization, subscribed by me . . . are true and correct." AR1434. In addition, after placing plaintiff under oath, Officer Loo asked plaintiff to confirm orally certain written answers that he provided in his application, including questions 34 and 35. Plaintiff orally confirmed his response of "No" to both questions 34 and 35. Both answers were false.

- On March 3, 2017, USCIS issued a detailed decision denying plaintiff's application for naturalization.

  o The USCIS decision recounted the procedural history of plaintiff's removal proceedings. In pertinent part, USCIS noted that (i) in March 2006, an Immigration Judge ordered that plaintiff be removed to Ethiopia and found that plaintiff knowingly filed a frivolous asylum application after proper notice of the consequences of doing so and (ii) in September 2011, an Immigration Judge denied plaintiff's application for adjustment of status and held that the Immigration Court could not approve an application for adjustment of status because the finding that

---

[7] Plaintiff suggests—without citing any evidentiary support in the record or any legal support—that the BIA's order granting plaintiff's motion for voluntary dismissal of his appeal of the Immigration Judge's September 21, 2011 order constituted an "accord and satisfaction." Although the BIA's order noted that plaintiff had submitted, along with his motion for voluntary dismissal, a copy of the Notice of Action transmitted by USCIS that reflected USCIS had approved plaintiff's adjustment of status application, there is absolutely nothing in the BIA's order to reflect that the BIA made its own determination that plaintiff had been granted lawful permanent residence. Accordingly, plaintiff's assertion that the BIA's order granting plaintiff's motion for voluntary dismissal constituted an "accord and satisfaction" is disregarded as nothing more than an unsupported allegation. *See Glynn v. EDO Corp.,* 710 F.3d 209, 213 (4th Cir. 2013) (holding that the non-movant may not rely on "mere allegations" to create a genuine dispute of material fact, but instead "must set forth specific facts that go beyond the mere existence of a scintilla of evidence").

plaintiff knowingly filed a frivolous asylum application barred plaintiff forever from obtaining any kind of visa.

- o USCIS concluded that "despite the clear language in the order of the Immigration Judge, a USCIS error resulted in the production of your Permanent Resident Card without an approved adjustment of status application." AR1408–09. Based on this conclusion, USCIS held that plaintiff was ineligible for naturalization because he "never obtained lawful permanent resident status." AR1410. Instead, USCIS explained, plaintiff's adjustment application "was denied by an Immigration Judge on September 21, 2011," and plaintiff's "Permanent Resident Card was issued in error based on a negligent mistake of USCIS." *Id.*

- Plaintiff noticed a timely administrative appeal (Form N-336) of USCIS's initial denial of his naturalization application.

- On March 1, 2019, USCIS issued a final decision affirming its initial denial of plaintiff's naturalization application.

  - o The USCIS final decision reiterated the lengthy procedural history of plaintiff's removal proceedings and his application for adjustment of status. USCIS reaffirmed its previous finding that "the USCIS Baltimore Field office erroneously authorized production of [plaintiff's] lawful permanent resident card . . . apparently based upon the erroneous conclusion that the Immigration Judge on September 21, 2011 granted, rather than denied, [the] adjustment of status application." AR1324. In this respect, USCIS observed that USCIS computer records had been updated to reflect (i) "that the purported adjustment approval date was September 21, 2011, the same date that the Immigration Judge actually denied [plaintiff's] adjustment application" and (ii) "that the Immigration Court ordered the adjustment approved, not denied." *Id.* USCIS also emphasized that the official version of the adjustment application that plaintiff originally filed with USCIS did not bear an adjudication stamp, further evidencing the lack of adjudication by a USCIS official.

  - o Accordingly, USCIS concluded that plaintiff never obtained permanent resident status in the United States; rather, all that plaintiff received from USCIS was erroneous documentation of permanent resident status. USCIS therefore concluded that plaintiff was not eligible for naturalization.

  - o In further support of its conclusion that USCIS had not actually adjudicated, much less approved, plaintiff's adjustment application, USCIS observed that USCIS was precluded from taking any such action for two reasons. First, USCIS held that because plaintiff was ordered removed from the United States on September 21, 2011, and that order had neither been reversed nor executed by December 18, 2012, USCIS lacked jurisdiction on that date to adjudicate his adjustment application.[8] Second, USCIS held that the Immigration Judge's express finding that plaintiff had knowingly filed a frivolous asylum application precluded him from obtaining lawful permanent resident status and could not be revisited by USCIS.

---

[8] *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1).

## II.

The well-settled summary judgment standard can be stated succinctly. Under Rule 56, Fed. R. Civ. P., summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court must "view the facts and draw all reasonable inferences in the light most favorable to the non-moving party." *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Importantly, however, the non-movant may not rely on "mere allegations," but instead "must set forth specific facts that go beyond the mere existence of a scintilla of evidence." *Id.* (internal quotation marks and citation omitted). Given these principles, it is clear the material facts supporting summary judgment are undisputed and require that summary judgment be granted in favor of defendants and against plaintiff.

## III.

The Immigration and Nationality Act ("INA") provides for judicial review of the denial of a naturalization application by USCIS. 8 U.S.C. § 1421(c). Importantly, the INA provides that "[s]uch review shall be *de novo*, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing *de novo* on the application." *Id.*[9] Accordingly, judicial review of the denial of a naturalization application is conducted *de novo*,

---

[9] Although neither party has argued that summary judgment is inappropriate in light of plaintiff's request for *de novo* review of her application for naturalization, it is worth noting that several circuits have concluded that summary judgment satisfies § 1421(c)'s *de novo* hearing requirement. *See Kariuki v. Tarango*, 709 F.3d 495, 500–03 (5th Cir. 2013) (holding that "a 'hearing de novo' within the meaning of Section 1421(c) encompasses an FRCP 56 review on summary judgment" and does not require "a full evidentiary hearing"); *Cernuda v. Neufeld*, 307 F. App'x 427, 431 (11th Cir. 2009) (same); *Abulkhair v. Bush*, 413 F. App'x 502, 507 n.4 (3d Cir. 2011) (same); *Chan v. Gantner*, 464 F.3d 289, 295–96 (2d Cir. 2006) (same).

and review is not limited to the administrative record.[10] *See, e.g., Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013); *Chan v. Gantner*, 464 F.3d 289, 291 (2d Cir. 2006).

It is well-established that when an alien applies for naturalization, "the burden is on the alien applicant to show his eligibility for citizenship in every respect." *Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 637 (1967). To that end, "doubts should be resolved in favor of the United States and against the claimant." *Id.* This is so because federal courts "have the power to confer citizenship only 'in strict compliance with the terms of an authorizing statute.'" *Cody v. Caterisano*, 631 F.3d 136, 142 (4th Cir. 2011) (quoting *INS v. Pangilinan*, 486 U.S. 875, 884 (1988)); *see also United States v. Ginsburg*, 243 U.S. 472, 475 (1917) ("No alien has the slightest right to naturalization unless all statutory requirements are complied with.").

To qualify for naturalization, an alien applicant must establish, *inter alia*, (i) that he has been "lawfully admitted for permanent residence" in the United States and (ii) that he is "a person of good moral character." 8 U.S.C. § 1427(a). For the reasons that follow, it is clear that plaintiff cannot satisfy either of these statutory prerequisites for naturalization.

## A.

The INA provides that "no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." 8 U.S.C. § 1429; *see also id.* § 1427(a)(1); 8 C.F.R. § 316.2(a)(2)–(3). The plain meaning of this statutory provision is clear: to satisfy this requirement, an alien must demonstrate both (i) that he was actually granted permanent resident status and (ii) that the decision to grant him

---

[10] The *de novo* standard review of review of a denial of a naturalization application under § 1421(c) "is unusual in its scope—rarely does a district court review an agency decision *de novo* and make its own findings of fact." *Mobin v. Taylor*, 598 F. Supp. 2d 777, 780 (E.D. Va. 2009) (quoting *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir. 2000)); *see also O'Sullivan v. United States Citizenship and Immigration Services*, 453 F.3d 809, 812 (7th Cir. 2006) ("Congress specifically calls for *de novo* review in naturalization cases, while ordering great deference in other immigration contexts.").

permanent resident status was in substantive compliance with the immigration laws. *See Injeti v. U.S. Citizenship & Immigration Servs.*, 737 F.3d 311, 316 (4th Cir. 2013). In the instant case, the undisputed record evidence reflects (i) that plaintiff was never actually admitted for permanent residence and (ii) that even if, as plaintiff mistakenly contends, plaintiff had been admitted for permanent residence, such admission would not have been in substantive compliance with the immigration laws.

## 1.

The undisputed record evidence in this case makes clear that plaintiff was never actually admitted as a lawful permanent resident of the United States, notwithstanding the fact that on December 18, 2012 USCIS transmitted to plaintiff (i) a Notice of Action (Form I-797) indicating that his application for adjustment of status had been approved and (ii) a "permanent resident card" (Form I-551) stating that plaintiff had been a permanent resident of the United States since September 21, 2011. The reasons in support of this conclusion are as follows.

*First*, courts have routinely held that the documents USCIS issued to plaintiff—a favorable Notice of Action and a permanent resident card—do not themselves accord permanent resident status to an applicant; rather, immigration officials must have actually adjudicated and approved the applicant's application for an adjustment of status to grant the applicant lawful permanent residence.[11] *Nelson v. Reno*, 204 F. Supp. 2d 1355 (S.D. Fla. 2002), *aff'd*, 61 Fed. Appx. 670 (11th

---

[11] *See, e.g., Mozdzen v. Holder*, 622 F.3d 680, 684 (7th Cir. 2010); *Krasilych v. Holder*, 583 F.3d 962 (7th Cir. 2009); *Gowie v. USCIS*, 2016 WL 6917230, at *2 (S.D. Fla. Mar. 21, 2016); *Nelson v. Reno*, 204 F. Supp. 2d 1355 (S.D. Fla. 2002), *aff'd*, 61 Fed. Appx. 670 (11th Cir. 2003); *Ayoub v. Chertoff*, No. 05-71484, 2005 WL 1028180, at *2 (E.D. Mich. Apr. 20, 2005) (holding that because the plaintiff's "I-485 application was not approved prior to the placement of the I-551 stamp on his passport, or anytime afterwards . . . there is no basis for the Court to find that the Government's apparent error in placing the I-551 stamp on Petitioner's passport was, in effect, an approval of his I-485 application for lawful permanent resident status"); *Bassey v. I.N.S.*, No. C 01-4035 SI, 2002 WL 31298854, at *6 (N.D. Cal. Oct. 10, 2002) ("Because the [favorable Notice of Action] and passport stamp of June 14–15, 2000 were issued erroneously, they did not confer permanent resident status and the INS action of September 7, 2001 must be characterized as a denial of [the plaintiff]'s application for permanent resident status.").

Cir. 2003) well illustrates this principle. There, although immigration officials had not marked the alien's adjustment of status application approved, the officials nevertheless had placed a Form I-551 stamp—equivalent to the Form I-551 card issued to plaintiff here—on the alien's passport. *Id.* at 1356–57. Thereafter, immigration officials voided the Form I-551 stamp and denied the alien's adjustment of status application. *Id.* at 1357. The alien sought judicial review of this denial, arguing that "the stamp signifies final approval by [immigration officials] of [the alien]'s application for lawful permanent residence." *Id.* at 1358. The district court there rejected the alien's argument and explained:

> While the stamp typically serves as a *record*—in fact, the applicant's only record—of an approval, it is not *an* approval. Thus, it follows that an erroneously placed I-551 stamp does not create an approval where no such approval was actually granted.

*Id.* at 1359–60 (emphasis in original). Thus, the *Nelson* court held that because the alien "misconstrue[d] the legal effect of the I-551 stamp placed in his passport, and also fail[ed] to show that even one of the necessary applications were approved," the alien "fail[ed] to establish that he was ever granted lawful permanent residence in the United States." *Id.* at 1360. Accordingly, *Nelson* makes clear that the issuance of a favorable Notice of Action and a permanent resident card to an alien by USCIS does not constitute the admission of the alien as a permanent resident if USCIS did not actually adjudicate and approve the applicant's application for adjustment of status.

Many other decisions have echoed the holding in *Nelson*. *See supra* footnote 11. For example, in *Gowie v. USCIS*, 2016 WL 6917230, at *2 (S.D. Fla. Mar. 21, 2016), the district court held that the plaintiff's "status has not been adjusted to lawful permanent resident" notwithstanding the fact that the plaintiff had received "an I-797 (Notice of Action) and a permanent resident card" because "such materials alone do not constitute substantive legal approval for a change in status." Significantly, the Seventh Circuit has held that even the *intentional* issuance of an I-551 stamp to

an alien by immigration officials does not constitute the grant of lawful permanent residence to an alien in the absence of an actual adjudication of the alien's adjustment application by immigration officials. Specifically, in *Krasilych v. Holder*, 583 F.3d 962 (7th Cir. 2009), an immigration officer had deliberately placed an I-551 stamp on the plaintiff's passport in connection with "Operation Durango," an investigation targeting the fraudulent procurement of immigration benefits. *Id.* at 964. The Seventh Circuit rejected the plaintiff's argument "that the temporary I-551 stamp on his passport conferred lawful permanent resident status," holding:

> The stamp used by [the immigration officer] to mark [the plaintiff]'s passport was "authentic" in the sense that the same stamp would have been used if the government had approved a bona fide application for permanent residence. When used legitimately, the stamp is a symbol that immigration authorities have favorably adjudicated an application to adjust status, and in the absence of "countervailing evidence" the stamp itself can be used to verify a claim of permanent residence. [. . .] But [plaintiff]'s application was never adjudicated (it would have been denied if it was), and the "countervailing evidence" makes clear that the stamp . . . was placed in his passport only to give Operation Durango's fraudulent-document scheme the appearance of legitimacy. The stamp, then, is symbolic of nothing.

*Id.* at 967 (internal citations omitted).[12]

These authorities point clearly and persuasively to the conclusion that the documents USCIS erroneously issued to plaintiff in this case—a Notice of Action reflecting approval of plaintiff's adjustment of status application and a permanent resident card—did not accord lawful permanent resident status on plaintiff in the absence of an adjudication and approval of plaintiff's application by USCIS. And importantly, for the reasons that follow, the undisputed record

---

[12] *See also Mozdzen v. Holder*, 622 F.3d 680, 684 (7th Cir. 2010) (holding that the plaintiffs' receipt of an I-551 stamp, which "was only provided to give Operation Durango the appearance of legitimacy," "most certainly did not adjust their status to that of permanent residents" in light of the fact that the plaintiffs' "application for LPR status was never adjudicated or processed").

evidence also plainly demonstrates that USCIS did not in fact ever adjudicate or approve plaintiff's application for adjustment of status.[13]

*Second*, the absence of an approval stamp in the action block of the application for adjustment of status plaintiff filed with USCIS reflects that USCIS never approved plaintiff's application and granted plaintiff permanent resident status. To apply for lawful permanent resident status, an alien who is already in the United States must submit a written application (Form I-485) for adjustment of status to that of lawful permanent resident. *See* 8 U.S.C. § 1255(a). Such applications are typically adjudicated by USCIS, unless the immigration judge has jurisdiction over the application. *See* 8 C.F.R. § 245.2(a)(1). And importantly, USCIS has issued guidance instructing that if a USCIS officer adjudicating an application for adjustment of status decides to approve the application, he or she "must stamp the action block" contained on the application "with his or her approval stamp and approved 'security' ink." *See* USCIS Adjudicator's Field Guide, § 10.3(g). If, on the other hand, the USCIS adjudicator determines that an application is to be denied, he or she "must so note the action block." *See id.* § 10.3(h).

Here, the action block on the I-485 application for adjustment of status that plaintiff submitted to USCIS is blank. The action block contains neither an approval stamp nor a notation of denial. As the above-discussed USCIS guidance makes clear, if a USCIS officer had adjudicated plaintiff's application for adjustment of status, the officer would have filled in the action block with one of these two possible markings. *See id.* § 10.3(g), (h). Moreover, if the USCIS officer adjudicating plaintiff's application for adjustment of status had approved the application, the officer would have "stamp[ed] the action block with his or her approval stamp and approved 'security' ink." *See id.* § 10.3(g). Accordingly, the absence of an approval stamp in the action block

---

[13] To the contrary, the Immigration Court, which did adjudicate plaintiff's application for adjustment of status, denied the application.

of plaintiff's application for adjustment of status demonstrates that USCIS never adjudicated, much less approved, plaintiff's application and thus never granted plaintiff permanent resident status.

*Third*, because plaintiff had been placed in removal proceedings, USCIS lacked jurisdiction to adjudicate plaintiff's application for adjustment of status, which is further evidence that USCIS did not actually adjudicate plaintiff's application or accord plaintiff permanent resident status. The regulations under the INA provide that "USCIS has jurisdiction to adjudicate an application for adjustment of status filed by any alien, unless the immigration judge has jurisdiction to adjudicate the application under 8 CFR 1245.2(a)(1)." 8 C.F.R. § 245.2(a)(1). Section 1245.2(a)(1) in turn makes clear that "[i]n the case of any alien who has been placed in deportation proceedings or in removal proceedings . . . the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." *Id.* § 1245.2(a)(1). In short, "once deportation proceedings are initiated against an alien, jurisdiction over an application for adjustment lies only with the Immigration Court." *Koszelnik v. Sec'y of Dep't of Homeland Sec.*, 828 F.3d 175, 180 (3d Cir. 2016).

These principles confirm that USCIS did not have jurisdiction to adjudicate plaintiff's application for adjustment of status on December 18, 2002, the date on which USCIS erroneously transmitted to plaintiff a Notice of Action indicating his application had been approved. Removal proceedings commenced against plaintiff on June 10, 2003, the date plaintiff's Notice to Appear was filed with the Immigration Court.[14] On September 21, 2011, the Immigration Court denied plaintiff's application for adjustment of status and ordered plaintiff removed from the United

---

[14] *See* 8 C.F.R. § 1003.14 ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."); *see also id.* § 1003.13 ("Charging document means the written instrument which initiates a proceeding before an Immigration Judge," which "include[s] a Notice to Appear.").

States, and plaintiff appealed these rulings to the BIA. Plaintiff's removal order remained pending before the BIA on December 18, 2012, the date on which USCSIS transmitted the Notice of Action. Thus, plaintiff was "in removal proceedings" at the time USCIS sent plaintiff a Notice of Action indicating his adjustment of status application had been approved, and USCIS accordingly lacked jurisdiction to adjudicate or approve his application. 8 C.F.R. § 1245.2(a)(1); *see Koszelnik*, 828 F.3d at 180. This conclusion is further evidence that USCIS did not, in fact, adjudicate and approve plaintiff's application for adjustment of status.

Seeking to avoid this conclusion, plaintiff argues that the Immigration Court did not retain exclusive jurisdiction on December 18, 2012, the date on which USCIS sent plaintiff the favorable Notice of Action, because plaintiff's removal proceedings were on appeal to the BIA and thus were no longer before the Immigration Judge. This argument fails, for as 8 C.F.R. § 1245.2(a)(1) makes clear, whether the Immigration Court has exclusive jurisdiction to adjudicate an adjustment of status application hinges on whether the alien "has been placed in deportation proceedings," not on the particular stage of the proceedings at the time of the alien's application.[15] Indeed, plaintiff's argument—that USCIS had jurisdiction to adjudicate plaintiff's application for an adjustment of status at the same that plaintiff's appeal of the Immigration Judge's denial of that same application was pending before the BIA—is fundamentally at odds with the principle of exclusive jurisdiction adopted by the regulations. *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1). Accordingly, plaintiff has failed to demonstrate that USCIS had jurisdiction to adjudicate plaintiff's adjustment of status application when USCIS issued the Notice of Action to plaintiff.

---

[15] *See, e.g., Mohammed v. Holder*, 695 F. Supp. 2d 284, 286–89 (E.D. Va. 2010) (holding that under 8 C.F.R. § 1245.2(a)(1) the Immigration Court retained exclusive jurisdiction to consider the adjustment of status application that the plaintiff filed two years after the BIA on appeal had affirmed the plaintiff's removal order issued by the Immigration Court but before the plaintiff's removal order had been executed).

*Fourth*, and finally, because the Immigration Court had previously found that plaintiff knowingly filed a frivolous application for asylum in the United States, plaintiff was ineligible for adjustment of status, which is further evidence that USCIS did not approve plaintiff's adjustment of status application or accord plaintiff permanent resident status. The INA provides that "[i]f the Attorney General determines that an alien has knowingly made a frivolous application for asylum . . . the alien shall be permanently ineligible for any benefits under this chapter," including adjustment of status to lawful permanent resident. 8 U.S.C. § 1158(d)(6). And importantly, the regulations delegate authority to make frivolousness determinations to the Immigration Court and the BIA, not to USCIS. *See* 8 C.F.R. §§ 208.20, 1208.20. Accordingly, if the Immigration Court or BIA has found that an alien knowingly filed a frivolous asylum application, USCIS is precluded from granting the alien adjustment of status and cannot revisit the Immigration Court's frivolousness finding.

Here, the undisputed record evidence reflects that on March 21, 2006, the Immigration Judge presiding over plaintiff's removal proceedings made an express finding that plaintiff had knowingly filed a frivolous application for asylum in the United States. Further, that frivolousness finding has never been reversed or vacated by the BIA or the Immigration Court and thus remained in effect on December 18, 2012 when USCIS erroneously transmitted the Notice of Action to plaintiff indicating that his application for adjustment of status had been approved. Therefore, plaintiff was ineligible for adjustment of status under 8 U.S.C. § 1158(d)(6), and USCIS lacked the authority to revisit or overrule the Immigration Court's finding that plaintiff had become ineligible in this manner pursuant to 8 C.F.R. §§ 208.20, 1208.20. This conclusion provides further

evidence that USCIS did not, in fact, adjudicate and approve plaintiff's application for adjustment of status.[16]

In sum, the undisputed record evidence persuasively demonstrates that USCIS did not in fact approve plaintiff's adjustment of status application and thus did not actually admit plaintiff to the United States for permanent residence. Indeed, the favorable Notice of Action and permanent resident card erroneously issued to plaintiff unmistakably reflect that the issuance of these documents was the result of a mere clerical error by USCIS, not an adjudication and approval of plaintiff's application by USCIS. The Notice of Action states that plaintiff's application had been approved, and the permanent resident card states that the purported adjustment approval date was September 21, 2011—the very date on which the Immigration Court *denied* plaintiff's adjustment application. This fact, along with all of the evidence discussed above, points unmistakably to the conclusions that (i) the Immigration Court's denial of plaintiff's adjustment of status application was the sole adjudication of that application that occurred and (ii) the favorable Notice of Action and permanent residence card were issued to plaintiff because USCIS erroneously recorded the Immigration Court's decision.[17] Accordingly, because plaintiff has never been admitted to the

---

[16] Seeking to avoid this conclusion, plaintiff attempts to relitigate the Immigration Court's frivolousness finding here, arguing in his briefing and at oral argument that the evidence shows that plaintiff did not knowingly file a frivolous asylum application. This argument fails because whether the Immigration Court's frivolousness finding was correct is simply not a material fact. Even assuming *arguendo* that the Immigration Court's frivolousness finding was in error, that would not alter the result reached here. As already explained, the mere fact that the Immigration Court had made a frivolousness finding with respect to plaintiff—correctly or not—is evidence that USCIS did not actually approve plaintiff's adjustment of status application because (i) the Immigration Court's frivolousness finding rendered plaintiff ineligible for adjustment of status, *see* 8 U.S.C. § 1158(d)(6), and (ii) USCIS lacked the authority to overrule the Immigration Court's frivolousness finding, *see* 8 C.F.R. §§ 208.20, 1208.20. Accordingly, whether the Immigration Court correctly found that plaintiff had knowingly filed a frivolous asylum application does not qualify as a disputed material fact and hence is neither addressed nor reconsidered here.

[17] In this regard, USCIS explained in its final decision denying plaintiff's naturalization application that even when the Immigration Court has exclusive jurisdiction over the adjudication of a particular adjustment application, the Immigration Court does not generate any paperwork reflecting the decision reached on the application other than the Immigration Court's written order. Thus, if the Immigration Court grants an application for adjustment of status and issues an order to that effect, USCIS is responsible for processing the Notice of Action (I-797) and the Permanent Resident Card (I-551).

United States for permanent residence, plaintiff is ineligible for naturalization. *See* 8 U.S.C. § 1429; *see also id.* § 1427(a)(1); 8 C.F.R. § 316.2(a)(2)–(3); *Injeti*, 737 F.3d at 316.

**2.**

Even assuming *arguendo* that USCIS actually admitted plaintiff as a lawful permanent resident, the undisputed record evidence further demonstrates that USCIS's decision to grant plaintiff that status would not have been, as the law requires, "in substantive compliance with the immigration laws." *See Injeti*, 737 F.3d at 316 ("[T]o establish that she was lawfully admitted for permanent residence, [an alien] must do more than simply show that she was granted [lawful permanent resident] status; she must further demonstrate that the grant of that status was in substantive compliance with the immigration laws."). In short, for the reasons already stated above, USCIS was precluded from granting plaintiff's application for adjustment of status (i) because the Immigration Court had exclusive jurisdiction over plaintiff's application, *see* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1), and (ii) because the Immigration Court had previously determined that plaintiff had knowingly made a frivolous application for asylum, *see* 8 U.S.C. § 1158(d)(6). Therefore, even if USCIS had actually granted plaintiff lawful permanent resident status, plaintiff would nevertheless be ineligible for naturalization on an additional, independent ground, namely that the grant of that status would not have been in substantive compliance with the immigration laws. *See* 8 U.S.C. § 1429; *see also id.* § 1427(a)(1); 8 C.F.R. § 316.2(a)(2)–(3); *Injeti*, 737 F.3d at 316.

**B.**

The INA also requires an applicant for naturalization to establish that, during the five years preceding the filing of his petition, he has been "a person of good moral character." 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a); *Berenyi v. Dist. Dir., INS,* 385 U.S. 630, 631 (1967). And

importantly, "[a]n applicant 'who has given false testimony for the purpose of obtaining any [immigration or naturalization] benefits' during the previous five years is precluded from being found to be a person of good moral character." *Yemer v. USCIS*, 359 F. Supp. 3d 423, 428–29 (E.D. Va. 2019) (quoting 8 U.S.C. § 1101(f)(6)) (alterations in original). Put simply, § 1101(f)(6) bars a finding that an alien has been a person of good moral character during the requisite period if the alien made a statement that (i) qualifies as testimony under § 1101(f)(6), (ii) was false, (iii) was made for the purpose of obtaining an immigration benefit, and (iv) was made within the five-year statutory window. *Yemer*, 359 F. Supp. 3d at 430.

Here, the undisputed record evidence reflects that plaintiff made statements to immigration officials during his naturalization application process that satisfy all four of these requirements, which bars plaintiff from being found to be a person of good moral character.[18] In particular, on July 18, 2016, plaintiff filed a Form N-400 naturalization application that required plaintiff to answer the following two questions:

> 34. Have you ever been ordered removed, excluded, or deported from the United States?
> 35. Have you ever been placed in removal, exclusion, or deportation proceedings?

Plaintiff answered "No" to questions 34 and 35 and signed the application, certifying under penalty of perjury under the laws of the United States of America that his application was true and correct. In addition, during plaintiff's naturalization interview with USCIS on February 23, 2017, plaintiff again signed the application in the presence of USCIS Officer Minah Loo, certifying under penalty of perjury that plaintiff knew that the contents of the application were true and correct. Officer Loo

---

[18] Although USCIS did not identify plaintiff's lack of good moral character as a basis for its denial of plaintiff's naturalization application, that issue may nonetheless be taken into account in the instant proceeding. As stated above, review of USCIS's denial of a naturalization application under § 1421(c) is *de novo*. Accordingly, "review is not limited to the administrative record" and the district court in a 1421(c) proceeding may address grounds for denying the plaintiff's naturalization application, such as his lack of good moral character, that were not cited by USCIS below. *Kariuki v. Tarango*, 709 F.3d 495, 502 (5th Cir. 2013); *Yemer*, 359 F. Supp. 3d at 431–33.

also placed plaintiff under oath and asked plaintiff to confirm orally certain written answers that he provided in his application, including questions 34 and 35. Plaintiff orally confirmed his response of "No" to both questions 34 and 35.

Plaintiff's statements concerning his history in removal proceedings clearly satisfy the four requirements in § 1101(f)(6) and thus demonstrate that plaintiff was not a person of good moral character during the requisite period. *First*, plaintiff's oral confirmation of his written responses in the application given during his naturalization interview qualify as "testimony" under § 1101(f)(6). In this respect, the Supreme Court has held that "oral statements made under oath" constitute "testimony" for purposes of § 1101(f)(6). *Kungys v. United States*, 485 U.S. 759, 780 (1988). The undisputed record evidence reflects that plaintiff was under oath during his naturalization interview with USCIS Officer Loo and that plaintiff orally confirmed his written answers stating that he had never been placed in removal proceedings or ordered removed. These oral statements made under oath thus qualify as testimony under § 1101(f)(6). *See Bernal v. I.N.S.*, 154 F.3d 1020, 1023 (9th Cir. 1998) (concluding that "the statements made by an applicant in a naturalization examination are 'testimony' within the meaning of 8 U.S.C. § 1101(f)(6)"); *Yemer*, 359 F. Supp. 3d at 430.

*Second*, plaintiff's statements (i) that he had never been ordered removed from the United States and (ii) that he had never been placed in removal proceedings were demonstrably false. As the undisputed record evidence makes clear, immigration officials initiated removal proceedings against plaintiff in the Immigration Court on June 10, 2003, and the Immigration Court ordered plaintiff removed to Ethiopia on *three* occasions, on May 9, 2005, March 21, 2006, and September 21, 2011. Accordingly, plaintiff's statements concerning his history in removal proceedings were clearly false.

*Third*, plaintiff's false testimony was plainly provided for the purpose of obtaining naturalization benefits. As courts have sensibly concluded, evidence that an alien knowingly made false statements during his naturalization interview persuasively demonstrates that the alien made such statements with the intent to obtain an immigration benefit, *i.e.* naturalization. *See, e.g., Bijan v. United States Citizenship & Immigration Servs.*, 900 F.3d 942, 946 (7th Cir. 2018); *Yemer*, 359 F. Supp. 3d at 431. Here, there can be little doubt that plaintiff knew at the time of his naturalization interview that he had previously been (i) placed into removal proceedings and (ii) ordered removed—making it obvious to plaintiff that his statements to USCIS Officer Loo were false. Indeed, the undisputed record evidence reflects that at the time of plaintiff's naturalization interview, plaintiff had been in removal proceedings for nearly fourteen years, testified at and otherwise participated in his removal proceedings, and filed multiple administrative appeals of the Immigration Court's various rulings ordering plaintiff removed to Ethiopia. Moreover, the record reflects that plaintiff was ordered removed from the United States on three occasions and was advised that he was in removal proceedings by immigration officials numerous times during his extensive removal proceedings. It is therefore clear that plaintiff knew that his statements made during his naturalization interview concerning his removal history were false; as a result, there can be no doubt that plaintiff gave that false testimony for the purpose of obtaining an immigration benefit.[19]

_____

[19] Plaintiff attempts to argue that he did not knowingly give false testimony concerning his removal history because the false responses on his naturalization application and in his interview were the product of an honest misunderstanding about the meaning of the term "removal proceedings." In support of this argument, plaintiff has submitted his own affidavit, in which plaintiff asserts that based on his limited understanding of English, plaintiff believed removal proceedings referred only to criminal proceedings and not to hearings in immigration court. Such sparse evidence is insufficient as a matter of law, in the face of the substantial record evidence to the contrary, to create a genuine issue of fact concerning whether plaintiff knew he had been placed in removal proceedings. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."). Indeed, as noted above, plaintiff was specifically advised by immigration officials on numerous occasions during his extensive removal proceedings that he was in removal proceedings. Perhaps most pointedly, the

*Fourth*, it is undisputed that plaintiff gave this false testimony during the five years preceding the filing of his petition. Indeed, as already discussed, the undisputed factual record establishes that plaintiff gave false testimony concerning his history in removal proceedings in connection with his naturalization application. Accordingly, it is clear that plaintiff gave false testimony within the relevant statutory period under § 1101(f)(6). *See Yemer*, 359 F. Supp. 3d at 431 (holding that testimony given by an alien during the alien's interview on her naturalization application fall within the five-year statutory window).

In sum, the undisputed record evidence demonstrates that plaintiff gave false testimony for the purpose of obtaining naturalization benefits within the five-year period preceding the filing of his naturalization application. Accordingly, 8 U.S.C. § 1101(f)(6) precludes a finding that plaintiff was a person of good moral character for the five years preceding the filing of her petition.

## IV.

In conclusion, for the reasons stated above, the undisputed record evidence demonstrates that plaintiff is not entitled to naturalization on three separate grounds. First, plaintiff was never actually admitted as a permanent resident of the United States; rather, it is unmistakably clear that plaintiff was issued a permanent resident card and favorable Notice of Action due to a clerical error by USCIS, not an actual approval or adjudication of plaintiff's adjustment application by USCIS or the Immigration Court. Second, even if plaintiff had been admitted as a permanent resident, such a decision to grant him permanent resident status would not have been in substantive

---

Notice to Appear issued to plaintiff on June 10, 2003 specifically directed plaintiff to appear "[i]n removal proceedings under section 240 of the Immigration and Nationality Act" to show "why you should not be removed from the United States" based on the allegations in the Notice to Appear. Thus, it is clear that whatever plaintiff thought removal proceedings to be, he clearly knew that he had been placed into them. In any event, plaintiff's alleged misunderstanding about the definition of removal proceedings in no way casts doubt on the conclusion that plaintiff knew he had been removed to Ethiopia. Thus, even if there were a genuine dispute as to whether plaintiff knew he had placed into removal proceedings—which there is not—plaintiff has cited to nothing in the record to call into question the conclusion that plaintiff knowingly made a false statement to immigration officials during his naturalization interview, *i.e.* that he had never been ordered removed from the United States.

compliance with the immigration laws. Third, even if plaintiff had been actually and lawfully accorded permanent resident status for the required period of time, the fact that plaintiff provided false testimony during his naturalization interview for the purpose of obtaining naturalization precludes a finding that plaintiff has been a person of good moral character during the requisite period. Accordingly, because plaintiff has neither been "lawfully admitted for permanent residence" in the United States nor been "a person of good character" for the statutorily mandated periods of time, plaintiff is ineligible for naturalization. *See* 8 U.S.C. § 1427(a).

Summary judgment must therefore be entered in favor of defendants and against plaintiff in this matter.

An appropriate order will issue.

Alexandria, Virginia
August 13, 2019

T. S. Ellis, III
United States District Judge